**WHITE-ALLEN CHEVROLET CO., Plaintiff-Appellee, v LICKER et, Defendant-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20885.   Decided May 3, 1948.

Rocker & Schwartz, Cleveland, for plaintiff-appellee.
Gerald A. Doyle, Cleveland, for defendants-appellants.

## OPINION

By SKEEL, J.

This case comes to this court on appeal on questions of law from a judgment for the plaintiff in the common pleas court of Cuyahoga County. The case was tried in part on a stipulation as to the facts. A summary of the stipulation of facts is as follows:

The plaintiff appellee is a dealer in motor vehicles in Dayton, Ohio. The defendants also deal in motor vehicles in Cleveland. One Carmelo Caccamise, a resident of Buffalo, New York, was the owner of a 1940 Buick sedan which he had insured against theft with The Fidelity Guaranty Fire Corporation. On April 29, 1944, he reported to the authorities and to his insurance company that his automobile had been stolen.

In due time he filed a claim with the insurance company for compensation because of such loss. On July 10, 1944 the insurance company adjusted said claim by paying to Carmelo Caccamise $1100.00 and upon receipt of the money Caccamise delivered to the insurance company a bill of sale for the automobile. On September 26, 1944, Caccamise filed an application with the Motor Vehicle Bureau of New York for a certificate of registration for the Buick automobile, stating therein that it had been stolen and recovered and that the original registration certificate had been lost. A new certificate of registratioin was issued by the Department to Caccamise. He thereupon assigned the new registration to Sam Cardello and obtained a new registration under that name. In October, 1944 a person representing himself to be Sam Cardello, drove the automobile to Cleveland and obtained a certificate of title from the Motor Vehicle Department of Ohio. He then sold the automobile to the appellant who sold it to the appellee who, in turn, sold and delivered it to a customer, one Charles Weidel. In all of these transactions certificates of title were delivered as provided by law.

After the sale of the automobile by the appellee to its customer, the Dayton police in company with the police officials from Buffalo, N. Y., took possession of the automobile from the customer, as a stolen car, and delivered it to The Fidelity Guaranty Fire Corporation. The customer then demanded and received from the appellee the amount he paid the appellee for the automobile and this action was brought by the appellee to compel the appellant to return to the appellee the amount it paid the appellant for the automobile.

The only witness to testify was Robert Licker, one of the defendants appellants. In part he testified that he was called to Buffalo N. Y., to testify for the state in a criminal prosecution of Carmelo Caccamise who was charged with obtaining money from The Fidelity Guaranty Fire Corporation by false pretense, and filing a false claim, which charges grew out of Caccamise's claim for compensation because of the claimed loss by theft of the same Buick automobile sold by the appellant to the appellee. He testified further that Carmelo Caccamise, who was on trial, was in fact the same person who sold him the Buick automobile in Cleveland in October, 1944, and who then represented himself to be Sam Cardello. This testimony stands unchallenged in the record. Judgment was returned for the plaintiff appellee in the full amount claimed.

It is the contention of the appellant that:

(1) The court erred in rendering judgment against the appellants.

(2) The court erred in overruling appellants' motion for new trial.

(3) The judgment so rendered is contrary to law and should have been in favor of the appellants and against the appellee.

(4) The judgment so rendered is not sustained by the weight of the evidence.

(5) Other errors apparent from an inspection of the record.

The right of the defendant appellant to the automobile purchased from Caccamise is not dependent upon the certificate of title procured by Caccamise from the Motor Vehicle Department of Ohio. There is no doubt but that at the time Caccamise made claim for the insurance money representing that his automobile had been stolen, he was the owner of such automobile and was in possession of it at least until he reported it stolen. There is no evidence as to where the automobile was after it was reported stolen and the claim made upon the insurer until Caccamise under the assumed name of Cardello, drove it to Cleveland and presented it for sale to the defendants. It is equally clear that the insurance company never received delivery of or had possession of the automobile and when they received the bill of sale in settling Caccamise's claim that the automobile had been stolen they had no knowledge as to where it was. Further, there is no evidence in the record that Caccamise's automobile was actually stolen. The fact that Carmelo Caccamise was arrested, indicted and put on trial for obtaining money from the insurance company on the false representation that the automobile had been stolen and for making a false police report to that effect would justify just the contrary conclusion.

Sec. 8405 GC provides as follows:

"When a person having sold goods continues in possession of the goods, or of negotiable instruments of title to the goods, the delivery or transfer by that person or by an agent acting for him, of the goods or documents of title under any sale, pledge or other disposition thereof, to any person receiving and paying value therefor in good faith, and without notice of the previous sale, shall have the same effect as if the person making the delivery or transfer were expressly authorized by the owner of the goods to make it."

The history and effect of this section of the sales code is discussed in Williston on Sales, Volume 1, Section 349, page 83 as follows:

"The question whether a seller who retains possession of goods after having transferred the property in them can make an effective sale of them to another purchaser who is ignorant of the prior bargain seems not to have been squarely raised, or at any rate fully discussed in modern English case law. There is, however, a dictum in 1821 by Abbott, C. J., that the second buyer with delivery would prevail. It is said by the editor of Blackburn on Sales, that this is inconsistent with the later case of Reeves v Capper. In the latter case, however, the goods in question had been delivered to the first buyer though they were subsequently redelivered to the seller to hold as bailee, and the effect of the original delivery was relied on by the court in sustaining the title of the first buyer. Not long afterwards, however, there are decisions which are inconsistent with the dictum of Chief Justice Abbott.

Such decisions seem not to have commended themselves to the English Parliament for in 1889 a statute finally settled the matter in favor of the buyer who first secured delivery though he might hold under a subsequent sale. In the United States the same conclusion has been generally reached. In the leading case a Massachusetts decision, in 1821, the court said:

'The general rule is perfectly well established that the delivery of possession is necessary in a conveyance of personal chattels, as against every one but the vendor. When the same goods are sold to two different persons by conveyance equally valid, he who first lawfully acquires the possession will hold them against the other. This rule is now in effect confirmed by the Sales Act.' "

Professor Brightman, Western Reserve University Law School (1921) in an article published in 19 Ohio Law Reporter, 204, page 209 says:

"Two years after the sales act was adopted, namely in 1911, the supreme court had to decide the respective rights of contending vendees under the following circumstances: The A Piano Company agreed to sell X a new piano; at the same time C gave the A Piano Co., an instrument 'transferring her full right to ownership of one Harvard piano.' This Harvard piano was to be sold by The A Piano Co., and the amount of the sale credited on the purchase price of the new piano. Four months later, neither party having done anything in execution of the above transaction, The B Piano Co., sold X a piano and accepted the Harvard piano above mentioned in part payment of the same. The B Piano Co., had no knowledge of the prior

transaction between X and The A Piano Company. As soon as The A Piano Co., learned of the sale of the Harvard piano to The B Piano Company, it sued the B Piano Co., for conversion of the piano. The Justice, Common Pleas and Circuit Courts all rendered judgment in favor of The A Piano Co. The Supreme Court held without expressly referring to §8405 GC that as between the parties to a sale of specific goods a presumption arises that title passes immediately without a delivery of the goods but as to third parties, in this case innocent vendees, there must be not only a formal delivery to the vendee claiming the goods, but there must be an actual and visible change of possession.

Thus, after a period of 78 years, during which time the courts of Ohio had consistently held that in the absence of fraud, delivery to the prior vendee was unnecessary in order to defeat the rights of the subsequent vendee in the same goods, it was established both by statute and by decision of the court of last resort that as between contending vendees claiming ownership of the same goods, purchased from the same vendor, that vendee will prevail who first secured the delivery of the goods although his purchase of the goods was subsequent in time, provided he purchased in good faith and for value. Now under the existing law in Ohio it is very difficult to defeat the rights of innocent vendees for value, who secure the delivery of the goods. Such vendee's rights may still be defeated in the absence of estoppel if the vendor is not the owner of the goods and has no authority to sell the same."

In 35 O. Jur., page 800, paragraph 82, under the title "Sales" provides:

"The Uniform Sales Act has adopted a view that gives to the bona fide purchaser without notice of the previous sale, a perfect title as against the first vendee who has left the goods in the hands of the vendor.' A further qualification, however, is that the second vendee receive the goods or documents of title and pay value therefor. This section takes care of a pledge or other disposition of the property or documents as well as a sale."

There being no evidence that the automobile had been stolen it must be presumed that Carmelo Caccamise continued in possession of it. This must be so, under the facts in this case, where it is conclusively established that he brought it to Ohio and sold it to the defendants appellants. The pro-

visions of §8405 GC are therefore applicable under the uncontroverted facts in this case.

The burden of establishing facts which would place the ownership of the automobile in the insurance company good as against any subsequent innocent purchasers for value from Caccamise, is upon the plaintiff. This the plaintiff has failed to do. Upon the uncontroverted facts, as disclosed by the record, the defendant appellants having received good title to the automobile as against any claim of the insurance company, passed good title thereto to the plaintiff appellee and they in turn passed good title to their customer Charles Weidel. His surrender of the automobile to the police department could not create a legal right to the return of the consideration paid therefor and in returning such consideration the plaintiff appellee could not thereby create a cause of action therefor, against the defendant appellants.

For the foregoing reasons the judgment is reversed and final judgment is entered for the defendant appellants. Exceptions. Order See Journal.

MORGAN, J, concurs and HURD, J, dissents.

HURD, PJ, (dissenting) is of the opinion that the judgment of the Municipal Court should be affirmed upon the authority of Finance Co. v Munday, 137 Oh St 504; Mock v Kaffitts etc., 75 Oh Ap 305, and Toms v Hartford Ins. Co. 146 Oh St 39-43, and therefore dissents.